UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Cheyenne Partners, LLC,                              Case No. 3:19-cv-1093

            Plaintiff,

      v.                                         MEMORANDUM OPINION
                                   AND ORDER

J.C. Penney Corporation, Inc., *et al.*,

            Defendants.

## I.  INTRODUCTION

On May 15, 2019, Plaintiff Cheyenne Partners, LLC filed a Complaint against Defendants J.C. Penney Corporation, Inc. ("JCP"), American Technologies, Inc. ("ATI"), and Berkley Insurance Company.  (Doc. No. 1).  The Complaint brought claims for breach of contract, promissory estoppel, unjust enrichment, quantum meruit, and intentional or negligent misrepresentation against JCP; and a single claim on a surety bond against ATI and Berkley.  (*Id.*).  In response, Defendants collectively asserted counterclaims against Cheyenne for fraud, breach of contract, slander of title, tortious interference, recission, declaratory judgment, and violations of Ohio's Deceptive Trade Practices Act (Ohio Revised Code Chapter 4165).  (Doc. No. 11).  The matter is currently before me on Defendants' motion for summary judgment to dismiss all claims brought against JCP.  (Doc. No. 41).  Cheyenne opposed the motion, (Doc. No. 44), and Defendants replied.  (Doc. No. 46).

## II.  BACKGROUND

On November 5, 2017, the J.C. Penney store located in the Franklin Park Mall in Toledo, Ohio suffered water damage from multiple roof leaks.  (Doc. No. 1 at 4).  That same day, JCP submitted a work order for water remediation to ATI, its national provider for restoration services.

(*Id.* at 3-4). Later that same day, ATI contacted Cheyenne to perform the work. (*Id.* at 4). Cheyenne verbally agreed to perform the remediation and sent an employee to survey the damage. (*Id.*). After inspection, Cheyenne presented an Emergency Service Agreement to the store's manager, who allegedly signed the agreement on behalf of JCP. (*Id.* at 5-6).

Cheyenne performed remediation work at the store from November 6th to the 20th, 2017. (*Id.* at 7). On December 9, 2017, Cheyenne issued an invoice to ATI, allegedly in its capacity as JCP's agent, for $321,148.58. (*Id.* at 9). Despite repeated requests, JCP refused to pay the invoice. (*Id.*).

On March 7, 2018, Cheyenne filed an Affidavit for Mechanic's Lien under Ohio Revised Code § 1311.06 with the Lucas County Recorder for $321,148.58. (*Id.* at 10). The affidavit lists ATI as the prime contractor for improvements to benefit JCP and claims Cheyenne is owed monies from ATI. (Doc. No. 11-6). ATI then applied to discharge the Mechanic's Lien and replace it with a surety bond for $481,723.00; the application was approved by the Lucas County Court of Common Pleas. (*Id.*; Doc. No. 1-3); *see In re Mechanic's Lien*, No. G-4801-CI-0201803494-000 (Lucas Cnty. C.P.). Berkley is listed on the bond as surety for ATI. (Doc. No. 1-3).

On May 15, 2020, JCP filed a petition for Chapter 11 bankruptcy in the Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). *See In re J.C. Penney Co., Inc., et al.*, No. 20-20182, (Bankr. S.D. Tx.). On May 19, 2020, JCP notified this Court and the other parties of its pending bankruptcy and the applicability of the automatic stay pursuant to 11 U.S.C. § 362. (Doc. No. 34). JCP listed Cheyenne as an unsecured creditor on its schedules and Cheyenne subsequently participated in the bankruptcy proceedings. On December 14, 2020, the Bankruptcy Court entered an order confirming JCP's Chapter 11 reorganization plan ("Confirmation Order"). (Bankr. Doc. No. 2169). This plan went into effect on January 30, 2021. (Bankr. Doc. No. 2508). On June 1,

2

2021, the Bankruptcy Court approved a stipulation between Cheyenne and JCP to modify the automatic stay ("Stipulation").  (Doc. No. 44-4; Bankr. Doc. No. 3084).

The Stipulation modified the automatic stay to permit Cheyenne to continue this litigation against the Defendants.  (*Id.*).  Of particular relevance is the following paragraph:

> Cheyenne agrees that if it obtains a judgment against [JCP] in the Underlying Litigation, it will not seek or otherwise pursue any enforcement of such judgment against [JCP].  Cheyenne further agrees that it will not seek or otherwise pursue any further action or claim against [JCP] . . . [JCP] agrees that Cheyenne may seek to prosecute the Underlying Lawsuit provided that Cheyenne agrees to do so solely against the Surety Bond and the non-Debtor defendants in the Underlying Lawsuit, and that Cheyenne does not seek relief to enforce any claims or any judgment against [JCP's] estate or assets.  For clarity, Cheyenne agrees to only pursue the Underlying Litigation against [JCP] nominally and, as such, Cheyenne cannot recover any monetary damages from [JCP].

(*Id.* at 2-3).  The parties dispute the effect of the Stipulation on the viability of certain claims, as well as the extent to which the Stipulation mandates JCP remain a party to this litigation.

## III.  ANALYSIS

Defendants seek summary judgment on Counts 1-5 of the Complaint, each of which raises claims solely against JCP, because further litigation against JCP is barred by the discharge injunction of the Confirmation Order entered by the Bankruptcy Court.  (Doc. No. 41).  Cheyenne opposes dismissal of these claims based on the Stipulation, which it argues permits Cheyenne to proceed on its claims against JCP.  (Doc. No. 44 at 2).  Thus, to resolve this dispute I would be required to interpret the Stipulation, and what, if any, effect it had on the discharge injunction.

But the required analysis is preserved by the Stipulation to the exclusive jurisdiction of the Bankruptcy Court:

> The [Bankruptcy] Court shall have sole and exclusive jurisdiction over the enforcement of the terms of this Stipulation as well as with respect to all matters arising from or related to the implementation of this Stipulation, and the Parties hereby consent to such jurisdiction to resolve any disputes or controversies arising from or related to the Stipulation.

(Doc. 44-4 at 3).  This language clearly reserves jurisdiction over the "enforcement of the terms" and for "all matters arising from or related to the implementation of this Stipulation" to the Bankruptcy Court.  Cheyenne's sole argument against summary judgment depends entirely on the interpretation of the Stipulation, *i.e.*, the Stipulation created an exception to the discharge injunction which permits Cheyenne to litigate its claims against JCP and precludes summary judgment.

Accordingly, because Cheyenne and JCP agreed to the exclusive jurisdiction of the Bankruptcy Court "to resolve any disputes or controversies arising from or related to [the] Stipulation[,]" I lack jurisdiction to rule on their positions until the parties have resolved their dispute over the interpretation of the Stipulation in the Bankruptcy Court.

## IV.  Conclusion

For the reasons stated above, I deny the Motion for Summary Judgment as premature. (Doc. No. 41).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

4